UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOROTHY DALE WRIGHT,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security Administration,<br><br>  Defendant. | Case No. CV 12-1893-SP<br><br><br>MEMORANDUM OPINION AND ORDER |

## I.

## INTRODUCTION

On March 9, 2012, plaintiff Dorothy Dale Wright filed a complaint against the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

1

Plaintiff presents one issue for decision, whether substantial evidence supports the Administrative Law Judge's ("ALJ") finding at step five. Memorandum in Support of Complaint ("P. Mem.") at 5-16; Memorandum in Support of Defendant's Answer ("D. Mem.") at 1, 5-15.

Having carefully studied the parties' moving papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, substantial evidence supports the ALJ's finding at step five. Consequently, this court affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was thirty-nine years old on her alleged onset of disability date, is a high school graduate. AR at 102, 237, 264. Plaintiff has past relevant work as a retail sales clerk. *Id.* at 88.

On June 30, 2009, plaintiff protectively filed an application for a period of disability and DIB due to reflexive dystrophy syndrome, lower left extremity pain, depression, left leg injury with leg problems, and back problems. *Id.* at 237, 255. The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing. *Id.* at 147-51, 155-59.

On December 22, 2010, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 44-68. A vocational expert also testified. *See id.* On January 31, 2011, the ALJ denied plaintiff's claim for benefits. *Id.* at 33-39. Plaintiff filed a timely request for review of the decision, which the Appeals Council denied. *Id.* at 22-26.

On March 9, 2012, plaintiff filed a complaint in this court. Upon stipulation of the parties, this court remanded the matter on May 30, 2012.

On March 6, 2013, plaintiff appeared and testified at a supplemental

hearing. *Id.* at 69-101. Barbara Miksic, a vocational expert, also provided testimony. *Id.* at 88-98. On May 24, 2013, the ALJ again denied plaintiff's claim for benefits. *Id.* at 4-14.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity from December 15, 1993, the alleged onset of disability, through December 31, 1996, the date last insured. *Id.* at 6.

At step two, the ALJ found that plaintiff suffered from the severe impairment of chronic residual dystrophy-type syndrome. *Id.*

At step three, the ALJ found that plaintiff's impairment, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined that she had the RFC to perform sedentary work, with the limitations that plaintiff: could lift/carry ten pounds occasionally and less than ten pounds frequently; could stand/walk two hours in an eight hour day, but required a five-minute break to sit every thirty minutes; could sit for six hours in an eight-hour work period with the need to reposition herself every 30 minutes; required a cane or crutch for extended ambulations; could not operate foot pedals with the lower extremities; could occasionally climb stairs, balance, and stoop; could not climb ladders, ropes, or scaffolds; could not kneel, crouch, or crawl; and must avoid all exposure to hazardous machinery and unprotected heights. *Id.* at 7.

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

The ALJ found, at step four, that plaintiff was incapable of performing her past relevant work as a retail sales clerk. *Id*. at 12.

At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that plaintiff could have performed, including surveillance systems monitor, sticker, and order clerk. *Id.* at 12-13. Consequently, the ALJ concluded that, for the relevant period, plaintiff did not suffer from a disability as defined by the Social Security Act. *Id*. at 14.

The ALJ's decision stands as the final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be

affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

### The ALJ Did Not Err at Step Five

Plaintiff argues that the ALJ erred at step five. P. Mem. at 5-16. Specifically, plaintiff contends that there was not substantial evidence to support the ALJ's finding because the vocational expert ("VE") provided erroneous testimony. *Id.*

At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other gainful activity. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can perform, given his or her age, education, work experience, and RFC. 20 C.F.R. § 404.1512(f). The Commissioner may satisfy this burden through the testimony of a VE. *Lounsburry*, 468 F.3d at 1114.

In response to a hypothetical that includes the limitations the ALJ found credible, a VE may testify as to "(1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). "A VE's recognized expertise provides the necessary foundation for his or her testimony." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Accordingly, VE

5

testimony is substantial evidence. *See Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) ("[T]he ALJ was within his rights to rely solely on the vocational expert's testimony.") (quoting *Conn v. Sec'y*, 51 F.3d 607, 610 (6th Cir. 1995)); *see also Bayliss*, 427 F.3d at 1218, n.4 (Federal Rules of Evidence do not apply in social security hearings). But where the VE testimony is fundamentally flawed, remand is appropriate. *See, e.g., Farias v. Colvin*, 519 Fed. Appx. 439, 440 (9th Cir. 2013) (remand required where VE provided employment data for a different occupation than the one he opined claimant could perform).

ALJs routinely rely on the Dictionary of Occupational Titles ("DOT") "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); *see also* 20 C.F.R. § 404.1566(d)(1) (DOT is a source of reliable job information). The DOT is the rebuttable presumptive authority on job classifications. *Johnson*, 60 F.3d at 1435. An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. *Massachi*, 486 F.3d at 1152-53 (discussing Social Security Ruling 00-4p).

At the March 6, 2013 hearing, in response to the ALJ's hypothetical person with the same RFC as plaintiff, the VE testified that such person would be able to perform the jobs of surveillance system monitor (DOT 379.367-010), sticker (DOT 734.687-090), and order clerk (DOT 209.567-014).[2] AR at 90-94. The VE testified that there were approximately 10,000 jobs locally and 75,000 jobs nationally for surveillance system monitor, 8,000 jobs locally and 150,000 jobs nationally for sticker, and 15,000 jobs locally and 300,000 jobs nationally for order clerk. *Id.* The VE further testified that her testimony was consistent with

---

[2] The VE also testified that plaintiff could perform the job of parking lot attendant (DOT 915.473-010), but the ALJ disagreed. *See* AR at 13, 92-93.

the DOT, but also modified based on her experience in observing each of the jobs being performed in the manner she testified someone with plaintiff's RFC could perform them. *Id.* at 93-94.

On cross examination, the VE testified that she defined "region" as "Los Angeles."[3] *Id.* at 94. She identified the Bureau of Labor Statistics ("BLS") as the source of her jobs numbers, but testified she modified the numbers to account for more skilled positions. *Id.* In identifying the number of jobs, she would start with the Occupational Employment Statistics ("OES") group and eliminate numbers from there to narrow the number for the particular occupations.[4] *Id.* at 95. She also used Job Browser Pro ("JBP") to estimate numbers of jobs. *Id.*

After posing hypotheticals, plaintiff's counsel requested time to submit print outs from JBP and present a written closing argument. *Id.* at 98. The ALJ granted the request and stated that counsel could submit further interrogatories to the VE. *Id.* at 98-99. On March 7, 2013, plaintiff submitted a written closing argument to the ALJ, presenting the same argument as in this complaint, as well as print outs from presumably BLS and JBP. *See id.* at 336-40, 344-68. Plaintiff also submitted one interrogatory to the VE in which she posed a hypothetical person with limitations different than those found by the ALJ to be credible and supported by substantial evidence. *Id.* at 341-42.

Plaintiff contends that the VE's testimony cannot constitute substantial evidence because: (1) the ALJ can only take administrative notice of actual job

---

[3] The Ninth Circuit has held that a relevant region can be a claimant's state. *Gutierrez v. Comm'r*, 740 F.3d 519, 526-28 (9th Cir. 2014) (finding that it was permissible for the VE to define the region as the state of California). Thus, although the VE defined the region as the Los Angeles metropolitan area, she could have used the numbers for the state.

[4] The OES program divides the nation's jobs into broad groups, which can be further divided into occupations.

numbers and not the job numbers testified to by the VE; (2) the VE's job numbers do not correspond to the sources she relied on; and (3) the VE's job numbers include part-time jobs. P. Mem. at 5-16. Plaintiff does not contest the ALJ's RFC determination or her ability to perform the specified jobs, but only the reliability of the job numbers.

### VE Testimony Is Substantial Evidence

Plaintiff's first argument that the ALJ cannot accept the VE's numbers by themselves is incorrect. As discussed above, VE testimony, by itself, constitutes substantial evidence when in response to a complete hypothetical. *See Bayliss*, 427 F.3d at 1218. *See, e.g.*, *Zalesny v. Comm'r*, 2014 WL 4418215, at *3 (E.D. Cal. Sept. 5, 2014) ("[T]he ALJ may rely on vocational expert testimony, which constitutes 'reliable job information.'"); *Kennedy v. Colvin*, 2014 WL 4264940, at *4 (C.D. Cal. Aug. 27, 2014) (finding that VE testimony about job numbers constituted substantial evidence). Here, plaintiff does not dispute the accuracy of the hypothetical posed to the VE and thus the VE's testimony is substantial evidence. Moreover, the VE is not required to explain the methodology of how she reached these numbers. *See Zalesny*, 2014 WL 4418215, at *3; *Xiong v. Colvin*, 2014 WL 3735358, at *9 (E.D. Cal. Jul. 28, 2014).

### Plaintiff Did Not Show That the VE Job Numbers Were Unreliable

Second, plaintiff argues that the VE's job numbers were unreliable because her job numbers did not correspond to the BLS and JBP numbers she testified that she used in her analysis. In support, plaintiff presents evidence that purports to undermine the reliability of the VE's testimony. *See* P. Mem., Exhs. 1-3. Specifically, plaintiff asserts that JBP reports only 520 regional surveillance system monitor jobs, 1 regional sticker job, and 69 regional order clerk jobs. *See id*. at 7-8. In contrast, the VE testified that there were 10,000 surveillance systems monitor, 8,000 sticker, and 15,000 order clerk jobs regionally. *See id.*, AR at 90-

93. Plaintiff maintains that the VE improperly used the number of jobs listed in the OES group number, which includes multiple DOT codes, rather than the job numbers for the individual jobs within the OES number. P. Mem. at 10-13.

At first glance, it would appear that plaintiff presents a persuasive argument. BLS employs the OES program. JBP is a private software program that cross references the DOT and Occupational Outlook Handbook with the other major coding systems, including OES.[5] Although a VE is not required to testify as to his or her methodology, here, plaintiff raised it at the hearing. On cross examintion, the VE testified that she used JBP to estimate the number of jobs. *Id.* at 95. The VE testified that she started with the BLS numbers, using the OES group as a starting point and eliminating numbers from there. *Id*. at 94-95. The VE also modified numbers to account for skilled positions and based on her experience. *Id.* at 93-94. Based on the VE's testimony, logically, her estimated job numbers should be smaller than the OES group the DOT number fell in. Her numbers were not and therefore appeared to be unreliable.

But there are several problems with plaintiff's argument. First, as the ALJ correctly pointed out, plaintiff had ample opportunity to cross-examine the VE on the numbers but chose not to do more than ask the VE for the source of her numbers. *See id.* at 13. Indeed, plaintiff submitted a written closing argument in which she made the very argument presented here, yet did not ask the VE to explain her job numbers in the interrogatories submitted concurrently. *See id*. at 336-68. Had plaintiff posed such an interrogatory to the VE, plaintiff would know how the VE determined her job numbers instead of speculating.

Second, the VE did not testify that she exclusively relied on JBP. Had the VE testified that she exclusively relied on the JBP, then remand would be warranted. *See, e.g., Darling v. Colvin*, 2013 WL 4768038, at *5 (C.D. Cal. Sept.

---

[5] *See* http://www.skilltran.com/jb_overview.htm.

9

4, 2013) (remanding because the VE based his opinion solely on JBP but his numbers were significantly higher than those in the JBP). In that case, rather than offering expertise, the VE would be presenting raw data from a non-authoritative source that did not pertain specifically to the DOT codes.[6] Instead, on direct examination the VE here testified that she also relied on her expertise.[7] AR at 94; *see Pitts v. Astrue*, 2011 WL 2553340, at *6 (N.D.Ohio May 19, 2011) (finding that although the VE relied on JBP, he also relied on other sources and thus "[p]laintiff's attempt to undermine the VE's testimony on the basis that it was inconsistent with the figures listed in the OES, is significantly weakened").

Finally, plaintiff presented a lay interpretation of the JBP numbers, which by itself is insufficient to undermine a VE's analysis. *See Cardone v. Colvin*, 2014 WL 1516537, at *5 (C.D. Cal. Apr. 18, 2014) ("[P]laintiff's lay assessment of the raw vocational data derived from [JBP] does not undermine the reliability of the VE's opinion."); *Vera v. Colvin*, 2013 WL 6144771, at *22 (C.D. Cal. Nov. 21, 2013) ("[L]ay assessment of the data derived from . . . [JBP] does not undermine the reliability of the VE's testimony" where the plaintiff "failed to introduced any VE opinion interpreting the data from those sources and the significance of the information reflected on the various reports is not entirely clear."); *Valenzuela v. Colvin*, 2013 WL 2285232, at *4 (C.D. Cal. May 23, 2013) (rejecting plaintiff's assessment, in part, because it "was unaccompanied by any analysis or explanation from a vocational expert or other expert source to put the raw data into context"). Indeed, plaintiff's lay analysis emphasizes the need for expert analysis and why an

---

[6] At step five, the Commissioner may take administrative notice of the DOT, County Business Patterns, Census Reports, Occupational Analyses, and Occupational Outlook Handbook. 20 C.F.R. § 404.1566(d).

[7] Whether the VE relied on other sources is unclear, but plaintiff concedes that the VE may have also relied on other sources. *See* Plaintiff's Reply Memorandum of Points and Authorities at 7.

ALJ cannot just rely on raw numbers. Plaintiff asserts that based on JBP numbers, there are only 520 surveillance system monitor jobs regionally and 10,247 jobs nationally, one sticker job regionally and 27 jobs nationally, and 69 order clerk jobs regionally and 1,383 nationally. *See* P. Mem. at 7-8. But from a logical perspective, these numbers cannot be accurate. Focusing only on the sticker and order clerk job numbers, it is implausible that there are only 27 sticker jobs and 1,383 order clerk jobs nationally. Plaintiff could have retained an expert to interpret the JBP data but did not.

In short, plaintiff failed to present evidence showing that the VE's job numbers were unreliable.

Part-Time Work

Finally, plaintiff contends that the VE impermissibly included part-time work in her job numbers. P. Mem. at 15. Plaintiff only speculates that the VE included part-time work in her analysis. The VE did not testify to that fact, nor did plaintiff pose the question to the VE. *See* AR at 90-98.

Even assuming the VE included part-time jobs in her job numbers, there is no case law stating that the ALJ cannot consider part-time work in the step five analysis. Although the Ninth Circuit has not directly addressed this issue, some Circuit Courts have found the ALJ may consider part-time work. *See Brault v. Comm'r*, 683 F.3d 443, 450, n.6 (2d Cir. 2012) ("We decline to create a *per se* rule prohibiting an ALJ from considering part-time positions."); *Liskowitz v. Astrue*, 559 F.3d 736, 745 (7th Cir. 2009) ("[A] VE may . . . testify as to the number of jobs that a claimant can perform without specifically identifying the percentage of those jobs that are part-time."); *see also King v. Astrue*, 2011 WL 1791553, at *19 (N.D. Cal. May 10, 2011) (rejecting plaintiff's argument that the VE had to distinguish between full-time and part-time jobs because the regulations only require that a significant number of jobs exist).

Accordingly, the ALJ's step five determination was supported by substantial evidence.

## V.

## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: October 27, 2014

SHERI PYM
United States Magistrate Judge